IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

vs.

Docket No.: 0649 3:17CR00050-001

JUDGE PHILLIPS

LARRY STEVEN COVINGTON, JR.

## DEFENDANT'S SENTENCING MEMORANDUM

Comes the defendant, Larry Steven Covington, Jr., by and through the below signed counsel, and respectfully submits this memorandum to assist the Court in determining a just and proper sentence in his case.

I

## INTRODUCTION

On June 21, 2017, Mr. Covington entered a plea of guilty to a single count Information charging him with Conspiracy to Defraud the Government with Respect to Claims, in violation of 18 U.S.C. § 286. Mr. Covington now stands before the Court awaiting sentencing. According to the Presentence Investigation Report prepared by Probation Officer Carol Cavin, after a three level reduction for acceptance of responsibility under USSG §§3E1.1(a) and (b), Mr. Covington has a total offense level of 17, and is in criminal history category V. This gives him a guideline

1

sentence range of 46 to 57 months. Mr. Covington submits that the guideline sentence range in this particular case conflicts with the directive of 18 U.S.C. § 3553(a) that the court impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing, and instead respectfully proposes a sentence of five years probation and a significant fine of such an amount as the Court may deem proper.

## II

## THE SENTENCING GUIDELINES AND 18 U.S.C. § 3553

As this Court is certainly aware, the sentencing guidelines – once mandatory – are now advisory. *United States v. Booker*, 543 U.S. 220, 245; 125 S. Ct. 7385; 160 L. Ed. 2d 621 (2005). The United States Supreme Court has rejected the requirement of extraordinary circumstances, or adherence to rigid mathematical formulas to justify a departure from the guidelines; and in addition, has determined that there is not a presumption of unreasonableness when a sentence varies from the advisory guideline range. *Gall v. United States*, 552 U.S. 38, 46; 128 S. Ct. 586; 169 L. Ed. 2d 445 (2007). Further, the Supreme Court has made it clear that district courts must make an "individualized assessment" based upon all of the factors specified in 18 U.S.C. § 3553(a). *Id.* 128 S. Ct. at 597.

Cases in the Sixth Circuit demonstrate that the advisory guidelines sentencing range is not the *per se* reasonable sentence. *United States v. Webb*, 403 F.2d 373, 385 (6th Cir. 2005) (noting that such a rule would be "not only inconsistent with the meaning of reasonableness, but is also inconsistent with the Supreme Court's decision in *Booker*, as such a standard 'would effectively re-institute mandatory adherence to the guidelines.'"). *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006) (on appeal "sentences properly calculated under the guidelines will be

credited with a rebuttable presumption of reasonableness"). The holding in *Williams* was clarified in *United States v. Marco Eugene Foreman*, 436 F.3d 638 (6th Cir. 2006), in which the Court explained:

> [A]lthough this statement seems to imply some sort of elevated stature to the guidelines, it is in fact rather unimportant. *Williams* does not mean that a sentence outside of the guideline range – either higher or lower – is presumptively unreasonable, it is not. *Williams* does not mean that a guideline sentence will be found reasonable in the absence of evidence in the record that a district court considered all of the relevant 3553(a) factors. . . moreover, *Williams* does not mean that a sentence within the guidelines is reasonable if there is no evidence that the district court followed its statutory mandate to **"impose a sentence sufficient, but not greater than necessary"** to comply with the purposes of sentencing in Section 3553(a)(2).

*Id.* at 644 (Emphasis added).

According to the foregoing, it is clear that a sentencing court can depart from the guidelines or apply a variance from those guidelines based on the sentencing factors of 18 U.S.C. § 3553(a); and while those concepts are distinct, the same facts and analysis can be used to justify a departure or variance. *United States v. Denny*, 653 F.3d 415, 419 (6th Cir. 2011).

Considering this, it is apparent that the obligation of the sentencing court is to impose the least restrictive sentence that will satisfy the purposes of 18 U.S.C. §3553(a). In doing this, the Court must consider, in relevant part, the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentence range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[;]

. . .

(5) any pertinent policy statement];]

(6) the need to avoid unwarranted sentence disparities among defendant's with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense. [18 U.S.C. § 3553(a).]

Of these, the factors set out in § 3553(a)(2) represent the major sentencing considerations of "retribution, deterrence, incapacitation and rehabilitation." *Tapia v. United States*, 564 U.S. 319-325 (2011).

### III

### INSIGHT INTO MR. COVINGTON'S CHARACTER AND BACKGROUND

With respect to the factors that this Court must consider in sentencing, and the sentence of probation that is being proposed, Mr. Covington emphasizes that he is making no attempt to

4

minimize his conduct or offer excuses for his actions. However, any sentence the Court sees proper to impose will certainly have a profound impact on the rest of Mr. Covington's life. Therefore, in order to effectively pass sentence in this case, the Court needs to be aware of significant information about Mr. Covington and his background.

This Court has knowledge of the events that have led Mr. Covington to sentencing here today;[1] but there is more to consider about Mr. Covington than simply those events as they have been related in the Presentence Investigation Report. While Mr. Covington wishes (as certainly all individuals facing a jail term in a federal prison wish) he could rewind the hands of time and make different choices, he realizes that this is obviously not possible. Nevertheless, Mr. Covington has already done much soul searching about his life, and he is using his time to engage in continued growth and to be as productive as possible.

Notably. Mr. Covington's friends, family members, employers and co-workers have rallied behind him and have given him a significant amount of support. Appended to this memorandum as Collective Exhibit 1, are a number of letters of support written on Mr. Covington's behalf, and forwarded to the undersigned for filing with this memorandum. Read together, these letters will hopefully provide the Court with a coherent, clear, and compelling window into Larry Covington, which counsel will not attempt to summarize.[2] These letters are worthy of a careful reading. They speak simply - yet clearly - from different points of view. They describe a man who was lured away and drawn into a wilderness for a time, but who found his

---

[1] For whatever effect the Court may be willing to grant in mitigation of the significant amount of monetary loss to the government by his conduct, it is noted at paragraph 15 on page 5 of the Presentence Investigation Report that Mr. Covington's illegal actions "spiraled out of control when, at some point, a prison gang discovered what he was doing and decided they wanted to receive part of his profits The gang threatened physical injury to him if he did not cooperate with them."

[2] The letters are arranged according to date of composition, from earliest to latest written. No letter was written or rewritten at the suggestion of counsel, and no letter submitted to counsel for inclusion were withheld from the Court.

way back to his family and to himself to become a decent, compassionate, kind, hard-working, conscientious man before he signed on to hand himself over to the government to atone for his offenses.

As these letters demonstrate, there is much more to Mr. Covington than his current situation may suggest. Mr. Covington is certainly not attempting to escape responsibility for his actions. He deeply regrets those actions and the effect they have had not only on his own life, but on the lives of his friends and family members as well. He wants nothing more at this point than to make amends, pay his debt to society, and move forward in a healthy and productive way. He is committed to ensuring that his choices result in him living a life in the future completely free from the criminal justice system.

## IV

## REHABILITATION AS A PRIMARY FACTOR IN SENTENCING

As the Court certainly realizes, two of the salient purposes of sentencing, deterrence and incapacitation to protect the public - which would otherwise justify a lengthy sentence - are counterbalanced by a low risk of recidivism. The risk that an individual will recidivate, in turn, is greatly affected by the level of rehabilitation the individual has achieved. A defendant who has been successfully rehabilitated does not need imprisonment to be deterred from re-offending; nor does he need to be locked up in jail for the public to be protected. As part of its consideration of sentencing factors, courts are called to recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). In fact, it can be argued that a long prison sentence can lead to increased recidivism because it disrupts employment, reduces prospects for future employment, weakens family ties, and exposes less serious offenders to

more serious offenders. Indeed, in *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) it was observed that the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility for a useful life."

Rehabilitation has always been a cornerstone of sentencing jurisprudence in this nation. Decisions from the Supreme Court have underscored the importance of both post-offense rehabilitation and post-sentencing rehabilitation. *Gall v. United States, supra*; and *Pepper v. United States*, 562 U.S. 476, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011).

In *Gall*, the defendant joined an ongoing conspiracy distributing ecstasy while he was in college, but withdrew from the conspiracy after seven months. He neither sold, nor used drugs after that time. Three and one-half years after withdrawing from the conspiracy, the defendant was charged and pled guilty. Although his guideline sentence range was 30-37 months, the District Court judge sentenced the defendant to probation, relying heavily on what the judge described as the defendant's "self-rehabilitation." The Eighth Circuit Court of Appeals reversed the sentence as substantively unreasonable. The Supreme Court reversed; affirming the probationary sentence and observing:

> The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative. This also lends support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts. See 18 U.S.C. § 3553(a)(2)(B), (C).

*Gall, supra,* 128 S. Ct. at 602.

In *Pepper*, the Supreme Court reiterated that "[a] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." Emphasizing that

7

rehabilitation may critically inform a sentencing judge's overarching duty to impose a sentence sufficient but not greater than necessary to comply with the sentencing purposes set out in § 3553(a)(2), the Court observed:

> It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams [v. New York]*, 337 U.S. at 247; see also *Pennsylvania ex re. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice usually requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the characteristics and propensities of the offender").

*Pepper v. United States, supra.*

Similarly, although it was addressing postsentencing rehabilitation (as opposed to presenting rehabilitation) the Pepper Court expounded on the importance evidence of rehabilitation has in sentencing:

> [E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." § 3553(a)(1). Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)-in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational and vocational training . . .or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see *McMannus*, 496 F. 3d, at 353 (Melloy, J., concurring) ("in assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C)&(D), there would seem to be no better evidence than a defendant's post-incarceration conduct").Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).

*Pepper, supra*, 131 S.Ct. at 1242.

A

## Mr. Covington's Attitude and Efforts Establish Both Rehabilitation and a Very Low Risk of Recidivism

1. Rehabilitation

While it is a complicated issue to Criminal Justice theorists. And one well beyond the scope of this memorandum, it cannot be gainsaid that recidivism of an individual into criminal activity is due, in large part, to a lack of hope of being able to achieve a better life through legitimate means and efforts. Rehabilitation, on the other hand, changes things. Rehabilitation opens doors, and it provides hope. Rehabilitation most surely is the critical factor in the difference between success and failure. And what then is rehabilitation? There are several factors – indeed hallmark signs – that true rehabilitation has occurred. In this case Larry Covington demonstrates those signs, and does so exceedingly.

It is true that Mr. Covington has a significant history of criminal conduct – this cannot be denied – and Mr. Covington makes no attempt to either deny or minimize his conduct. It would seem that for a while at least, Mr. Covington's life was hopeless and without direction, and that he was well on the road to spending a significant amount of that life behind bars. But, things are different with Mr. Covington now, and what is critically important, in regard to the sentence the Court must pass in this case, is the effort Mr. Covington has gone to in order to bring direction to his life, and to give himself hope for a future. In other words – *to become rehabilitated.*

As demonstrated by the attached letters, Mr. Covington is a valued employee. He is in a job where he has the opportunity to demonstrate his abilities and work ethic. Mr. Covington's

9

job responsibilities are not confined to a single duty. Instead, he operates equipment, lays pipe, repairs equipment, and he is also a welder. Mr. Covington performs each of these job functions well. Mr. Covington's work day is long; usually at least ten hours. When he leaves work and comes home – he works some more doing side jobs for others and also repairing and refurbishing his family home place he inherited when his mother passed away on January 31, 2017.

The point of all this is to demonstrate to the Court that Mr. Covington has crossed a bridge in his life where whatever allure there was to criminal activity no longer exists. Mr. Covington will candidly tell the Court that he was raised in a strict home and that he was never in trouble as a kid. But – as is often the situation - he got side tracked and fell in with the wrong crowd and started "running wild." He started drinking, then drinking heavily. He started selling drugs for a family "friend" – first marijuana, then cocaine - and his life began going downhill. Now, Mr. Covington has grown up. He has taken on the mantle and responsibilities of a man, and indeed he hopes as a man of integrity. Mr. Covington has reformed himself from the man he was and is living a productive, law abiding life. He has demonstrated self-improvement, he has demonstrated a fundamental change in his attitude, and he has demonstrated a complete withdrawal from the lifestyle he was living when he committed the offense for which he now awaits sentencing. Mr. Covington has undergone a wholesale transformation, much on his own initiative, and the evidence for this claim is tangible and uncontroverted. He has secured for himself from the ground up a bright future and a strong reason for hope of a life disconnected from the elements and influences which led him into criminal activity.

Mr. Covington's goal now is simply to have a house – his family's house,[3] to take care of his son, and to help make his son's life better that his own life has been. His is not a lofty goal, but it is an honorable one nonetheless, and it is something that the Court should consider closely in regard to the sentencing factors.

2. Effort to Begin Early Payment of Restitution

In addition to his efforts at rehabilitation, the Court can look at other actions Mr. Covington has taken to live on the straight and narrow, and to demonstrate that his stated desire to put his past criminal activities well behind him has substance. For example, realizing that he would be required to pay to the government a significantly large amount of restitution[4] as part of his agreement with the United States, Mr. Covington, through his fiancé Penny Smith, contacted the probation office in September, 2017, and inquired about the possibility of beginning the restitution payments even before he was required by the Court to make those payments. At this time, the probation officer, for whatever reason, discouraged Mr. Covington from making early payments; but the point is, Mr. Covington made the effort. It is submitted that the Court can consider this as a sincere effort to mitigate the harm of his conduct, as well as an example of rehabilitation. *See generally United States v. Robson*, 2007 WL4510259 (N.D. Ohio Dec. 18, 2007) (the district court varied because before the defendant was even charged, he had paid beck all of the restitution). *See also United States v. Curry*, 523 F. 3d 436 (4th Cir. 2008) (judge varied

---

[3] This home place has been in Mr. Covington's family for at least the last 75 years, having been purchased by Mr. Covington's grandfather, willed to his mother, and passed on in turn to Mr. Covington. At some point not long before she died, Mr. Covington's mother took out a second mortgage on the house. Mr. Covington is making his best attempts to pay off this second mortgage. In addition, the house is currently in great need of repair, and Mr. Covington spends much of his "off time" making necessary repairs to keep the house livable.

[4] According to the PSIR, the amount of restitution owed by Mr. Covington is $163,777.89.

11

five months below the guideline range for defendant's mail and wire fraud convictions to reflect his attempted restitution).

While addressing the subject of restitution, it should be noted that some courts have departed or varied downward to a probationary sentence in order to facilitate an individual's ability to pay restitution. *See, e. g. United States v. Gutierrez*, 2010 WL 3418309 (E.D. Wisc. Aug. 27, 2010) (imposing a sentence of probation in disability fraud case in order to enhance the defendant's ability to pay restitution); *United States v. Coleman*, 370 F. Supp. 2d 661 (S.D. Ohio 2005) (sentencing a defendant convicted of conspiracy to violate FDA Act involving misbranded drugs to probation, community treatment and house arrest in part because "five years of probation, as opposed to one year of imprisonment or imprisonment with supervised release, will afford more time to pay restitution"); United States v. Peterson, 363 F. Supp. 2d 1060 (E.D. Wisc. 2005) (imposing one day in prison so that bank fraud defendant would not lose his job and could pay restitution).

3. Attempt to Cooperate with the Government

As noted in the Presentence Report, the government has agreed to advise the Court of the nature and extent of any cooperation and assistance provided by Mr. Covington; and pursuant to USSG § 5K1.1 to recommend a downward departure from the guideline sentence level should Mr. Covington provide substantial assistance in the investigation or prosecution of other persons. Unfortunately, at the time this memorandum is being written, it appears unlikely that such recommendation will be forthcoming. Although Mr. Covington provided what information he had to the government regarding a corrupt Tennessee Department of Corrections prison warden, such information was several years old, and ultimately of little to no use in justifying further investigation, let alone prosecution of the warden.

Regardless of the actual use of a defendant's information, a court may grant a sentencing reduction where a defendant tries to cooperate, but the attempted cooperation does not ultimately assist the government in the investigation or prosecution of another. *See United States v. Tenzer*, 213 F.3d 34 (2d Cir. 2000) (district court has discretion to depart where defendant tried to negotiate with IRS to make payments through voluntary disclosure program, even though talks broke down and the defendant was convicted); *United States v. Doe*, 213 F. App'x 660 (10th Cir. 1997) (case remanded because sentence would have been unreasonable if court had not taken into consideration defendant's efforts to cooperate).

4. Voluntary Drug Rehabilitation

As noted in paragraph 57 on page 8 of the Presentence Investigation Report, Mr. Covington was prescribed pain medication following surgery in 2015 and became addicted. At present, he takes a prescribed dose of eight milligrams of Suboxone three times a day. It should be noted, however, that Mr. Covington, on his own initiative, attends a counseling program for addiction to pain medication. He attends this program voluntarily for the purpose of insuring he does not become re-addicted to these drugs. In fact, on one occasion during the time Mr. Covington has been under the supervision of the Probation Office and awaiting sentencing in this case, he received a prescription for Hydrocodone. Rather than fill this prescription, Mr. Covington took the prescription to April Wilson at the Probation Office. Certainly, the Court can consider this in regard to the efforts an individual has made, and is making in regard to rehabilitation and the risk of recidivating.

Studies have shown that individuals who attend and complete drug treatment programs have lower rates of recidivism, and the rate is lower for those who complete drug treatment in the

community that those who complete it in prison.[5] Completion of a rehabilitation program, or the facilitation of a community rehabilitation program, can form the basis of a downward departure or variance. *See, e.g. United States v. Rutherford*, 223 F. Supp. 2d 911, 915 (E.D. Wisc. 2004) (departing downward and noting that "[a] reformed offender is less likely to re-offend, thus a reduced sentence for such an offender will serve the purposes of specific deterrence and protection of the public"); *United States v. Parella*, 273 F. Supp. 2d 162, 164 (D. Mass. 2003) (departing to sentence of probation where the defendant completed rehabilitation program and began volunteering with children at risk, observing the link between drug rehabilitation and preventing recidivism.

B

<u>A Sentence of Five Years Probation is Appropriate in Mr. Covington's Case</u>

Admittedly, Mr. Covington's request for probation from a guideline range of 46 to 57 months is extraordinary, but Mr. Covington has effectively rehabilitated himself – which is an extraordinary thing. He is living a productive and law abiding life, helping himself out as well as helping others out. He is at the point now where those who go to prison want to get to as part of their own rehabilitative efforts. It is respectfully submitted that the Criminal Justice System should be sensitive to the kind of extraordinary thing that Mr. Covington has achieved and reward him for turning his life around. Other courts have recognized out of the ordinary rehabilitative efforts, and have granted probationary sentences against not so insignificant guideline ranges. *See, e.g. United States v. Shy*, 538 F. 3d 933 (8th Cir. 2008) (defendant's post offense rehabilitation, including her contributions to society through her "extraordinary work

---

[5] Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders*, 53 HASTINGS L.J. 1217, 1220 (2000).

14

with persons with disabilities" justified three years probation for possessing pseudoephedrine knowing it would be used to make methamphetamine, despite a guideline range of 37-46 months); *United States v. McFarlin*, 535 F. 3d 808 (8th Cir. 2008) (three years probation imposed for conspiracy to distribute cocaine rather than 60 month guideline term, based on defendant's extraordinary post-arrest rehabilitation, including his installation as a preacher, and serious health problems); *United States v. Parella*, 273 F. Supp. 2d 161 (D. Mass. 2003) (probation granted, rather than guideline range of 30-37 months, for a getaway drive in three bank robberies because the defendant totally changed his life and his behavior and treatment succeeded in producing a rehabilitated person unlikely to recidivate).

V

**THE PROPOSED SENTENCE**

As the Supreme Court noted in *Gall v. United States*, 552 U.S. 38; 128 S. Ct. 586; 169 L. Ed. 2d 445 (2007), a sentence of probation is not nothing: there are substantial restrictions on an individual's freedom while on probation, the courts can structure a probationary sentence that meets all of the purposes of sentencing, and probation is entirely appropriate.

The proposed sentence of five years probation and an appropriate fine in Mr. Covington's case represents a substantial penalty that adequately reflects the seriousness of the offense of conviction, will promote respect for the law, and provide just punishment as required by § 3553(a)(2)(A). While it is easy to become inured to enormous sentences in the federal system, a federal felony conviction resulting in five years of probation is substantial. In fact, there is no data to suggest that longer sentences have any marginally greater deterrent effect. Indeed, research has consistently demonstrated that "increases in the severity of punishments do

15

not yield significant (if any) marginal deterrent effect." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME & JUST. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*

The proposed sentence will be more than sufficient to deter Mr. Covington from similar crimes in the future, as required by Sections 3553(a)(2)(B) and (C). The interest in general deterrence will be served by the proposed period of probation and its collateral consequences. Nobody looking at what happened to Mr. Covington could mistakenly conclude that conspiring to defraud the government from its money is not a serious crime.

## VI

## CONCLUSION

Mr. Covington is very much aware of the difficult position the Court is in in regard to its responsibility to balance numerous interests in order to fashion a sentence that is both punitive and rehabilitative. Mr. Covington recognizes the Court's superior ability to fashion a sentence that best meets the needs and the ends of justice. The purpose of this memorandum, then, is to provide the Court with information and insight into Mr. Covington which it may find useful. Accordingly, Mr. Covington respectfully requests that this Court consider this memorandum in determining just sentence in his case.

Respectfully submitted, this the 2nd day of March, 2018.

By: s/ Edward L. Holt

Edward L. Holt (TNBPR#014359)
Attorney for Defendant
Held Law Firm
1522 Highland Avenue

Knoxville, TN 37916
865-637-6550

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2018, a copy of the foregoing was filed electronically. Notice of the filing will be sent by operation of the Clerk's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: *s/ Edward L. Holt*
Edward L. Holt (TNBPR#014359)
Attorney for Defendant